Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
Yufei Wang (SBN 346170)
*ywang@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310.474.9111
Facsimile:  310.474.8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone:  917.336.0171
Facsimile:  917.336.0177

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY MASON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>  vs.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>    Defendant. | Case No. 2:26-cv-7823<br><br>**CLASS ACTION COMPLAINT**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Beverly Mason ("Plaintiff"), individually and on behalf of all other similarly situated individuals, brings this class action against Defendant American Honda Motor Co., Inc. ("Honda" or "Defendant"), and alleges upon personal knowledge as to her own actions and her counsel's investigation, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      Plaintiff brings this action individually and on behalf of all similarly situated purchasers and lessees of certain Honda Clarity, Civic, HR-V, Odyssey, and Pilot vehicles equipped with Honda Sensing®, Honda's proprietary suite of advanced driver-assistance technologies (collectively, the "Vehicles" or "Class Vehicles").[1]

2.      Defendant American Honda Motor Co., Inc. ("Honda") maintains its United States sales and marketing headquarters in Torrance, California.[2] From that headquarters, Honda directs marketing, sales, service, parts distribution, warranty administration, and related operations for Honda-brand vehicles in the United States.[3]

3.      Honda sold the Class Vehicles as equipped with advanced safety technologies designed to help drivers recognize roadway hazards, avoid or mitigate collisions, maintain lane position, and safely operate their vehicles. Central to those representations was Honda Sensing®, an integrated suite of standard or available

[1] Specifically, this action concerns the following Honda vehicles: model year 2018-2025 Honda Odyssey, model year 2018-2025 Honda Pilot, model year 2022-2025 Honda Civic, model year 2023-2025 Honda HR-V, and model year 2018-2021 Honda Clarity Plug-In Hybrid. Plaintiff reserves the right to amend the definition of the Vehicles after conducting discovery.

[2] American Honda Motor Co., Inc., *Honda Operations and Locations*, Honda, https://www.honda.com/operations (last visited July 15, 2026).

[3] *See* American Honda Motor Co., Inc., *About Us*, Honda, https://www.honda.com/about (last visited July 15, 2026); American Honda Motor Co., Inc., *Honda Operations and Locations*, *supra* note 2.

1

CLASS ACTION COMPLAINT

driver-assistance technologies that relies on a windshield-mounted front sensor camera.

4.    As alleged herein, the Class Vehicles contain a common and latent defect affecting the front sensor camera and the components necessary for its proper operation (the "Defect").

5.    The Defect manifests during ordinary vehicle operation without misuse, abuse, or improper maintenance. Owners experiencing the Defect commonly receive numerous simultaneous warning messages indicating that multiple Honda Sensing® features have become unavailable or are operating abnormally. As a result, owners lose the benefit of the advanced safety technologies Honda represented would improve driver awareness, assist with collision avoidance, maintain lane position, and enhance overall vehicle safety.

6.    Repairing the Defect frequently requires extensive diagnostic procedures, replacement of the front sensor camera, software programming, aiming, calibration, and related labor, resulting in substantial out-of-pocket expenses for consumers. Even after undergoing repairs, owners remain at risk of recurring failures and additional repair costs because Honda has failed to provide an effective permanent remedy for the Defect.

7.    Honda knew or should have known of the Defect through its design and validation testing, authorized-dealer repair network, warranty and replacement-part data, technical-assistance requests, diagnostic information, customer complaints, and post-sale monitoring. Honda nevertheless continued selling the Class Vehicles without disclosing the Defect or providing an adequate remedy.

8.    Plaintiff experienced the Defect when her Vehicle began displaying numerous Honda Sensing® warning messages affecting multiple driver-assistance technologies. Plaintiff ultimately incurred thousands of dollars in out-of-pocket diagnosis and repair expenses. Had Honda disclosed that the front sensor camera

2

could prematurely fail, disable multiple standard driver-assistance functions, and require costly repairs, Plaintiff would not have purchased her Vehicle or would have paid substantially less for it.

9. Through the conduct alleged herein, Honda concealed and omitted material facts concerning the Defect, breached its express and implied warranties, violated applicable consumer protection laws, and was unjustly enriched at the expense of Plaintiff and Class Members.

10. Plaintiff therefore brings this action individually and on behalf of the proposed Class to recover all damages, restitution, declaratory relief, injunctive relief, attorneys' fees, costs, and all other relief authorized by law.

## PARTIES

**Plaintiff Beverly Mason**

11. Plaintiff Beverly Mason is, and at all relevant times was, a citizen of the Commonwealth of Virginia residing in the City of Roanoke, Virginia.

12. In approximately 2019, Plaintiff purchased a new 2018 Honda Clarity Plug-In Hybrid for personal, family, and household use, not for resale, and has owned the Vehicle continuously. Plaintiff purchased her Vehicle reasonably believing it was free from material defects and would provide the safety, reliability, quality, and performance Honda represented throughout its ordinary useful life.

13. Honda did not disclose, and Plaintiff did not know, that the Vehicle's front sensor camera was susceptible to premature malfunction, potentially disabling multiple Honda Sensing® functions and requiring substantial out-of-pocket repair expenses.

14. Beginning in approximately December 2025, the Vehicle displayed numerous warning messages affecting multiple Honda Sensing® functions. Plaintiff incurred approximately $2,933 in out-of-pocket expenses diagnosing and repairing the Defect.

CLASS ACTION COMPLAINT

15. Plaintiff continues to own and regularly operate the Vehicle, including commuting to work. She remains concerned that the Defect may recur and has suffered diminished vehicle value. Had Honda disclosed the Defect, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it.

**Defendant American Honda Motor Co., Inc.**

16. Defendant American Honda Motor Co., Inc. is a California corporation with its principal place of business at 1919 Torrance Boulevard, Torrance, California 90501.

17. At all relevant times, Honda designed, engineered, tested, manufactured, marketed, distributed, warranted, sold, leased, and serviced the Class Vehicles. Honda also developed, approved, and disseminated the advertising, marketing materials, warranty information, owner's manuals, technical publications, dealership communications, and customer-service policies concerning the Class Vehicles and Honda Sensing®.

18. Upon information and belief, Honda exercised substantial control over the design, testing, validation, marketing, distribution, warranty administration, technical support, and post-sale handling of the Class Vehicles and the Defect. Honda further exercised control over its authorized dealer network with respect to warranty repairs, diagnostic procedures, technical guidance, replacement parts, software updates, programming, calibration procedures, and customer communications relating to the Defect.

19. Honda derived substantial revenues from the sale and lease of the Class Vehicles throughout the United States, including within California and the Central District of California. Honda also derived substantial revenues from the sale of replacement parts and the administration of repair procedures associated with the Defect.

CLASS ACTION COMPLAINT

20.     Whenever reference is made in this Complaint to any act, omission, policy, practice, or representation of Honda, such allegation includes the acts of Honda's officers, directors, employees, agents, representatives, subsidiaries, affiliates, divisions, predecessors, successors, authorized dealerships acting within the scope of their authority, and all other persons acting on Honda's behalf or under its direction.

## JURISDICTION AND VENUE

21.     This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed Class consists of more than 100 members, and at least one member of the proposed Class is a citizen of a state different from Honda.

22.     This Court has personal jurisdiction over Honda because Honda is incorporated in California, maintains its principal place of business in California, regularly conducts substantial business throughout California, designed, marketed, distributed, warranted, and sold the Vehicles in California, and purposefully availed itself of the privilege of conducting business within this State. Honda's contacts with California are continuous, systematic, and directly related to the claims alleged herein.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Honda resides in this District for venue purposes, maintains substantial operations in this District, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

24.     Honda derives substantial revenue from the sale and lease of the Vehicles throughout California and this District and has purposefully directed the conduct alleged herein toward consumers in California. The claims asserted in this action arise directly from Honda's conduct within and directed toward this District.

5

CLASS ACTION COMPLAINT

## FACTUAL ALLEGATIONS

### A. The Class Vehicles Contain a Defective Front Sensor Camera System

25.    The Class Vehicles contain a common and latent defect affecting the forward-facing front sensor camera and the components necessary for its proper operation (the "Defect"). The Defect causes the front sensor camera to prematurely malfunction, intermittently fail, or cease functioning during ordinary and foreseeable vehicle operation.

26.    The front sensor camera is a principal component of Honda Sensing®, Honda's integrated suite of active-safety and driver-assistance technologies. Depending on the particular model and model year, Honda Sensing® uses the front sensor camera alone or together with a separately located millimeter-wave radar sensor to detect vehicles, pedestrians, lane markings, roadway boundaries, traffic signs, and other conditions in front of the vehicle.[4]

27.    Honda's own technical materials confirm that the camera and radar are distinct sensors. The camera is mounted to the interior side of the windshield behind the rearview mirror, while the radar sensor is located in the grille, bumper, or another forward exterior location depending on the vehicle.[5]

28.    Honda designed numerous Honda Sensing® functions to depend on environmental information generated by the front sensor camera. Honda's 2018 Clarity Plug-In Hybrid Owner's Manual, for example, expressly states that the

---

[4] Honda Motor Co., Ltd., *Honda SENSING*, Honda Global, https://global.honda/en/tech/Safety_and_driver_assistive_technologies_Honda_SENSING/ (last visited July 15, 2026).

[5] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual* 394 (2017), https://techinfo.honda.com/rjanisis/pubs/OM/AH/ATRW1818OM/enu/ATRW1818OM.PDF; Honda Motor Co., Ltd., *supra* note 4.

6

CLASS ACTION COMPLAINT

camera is used by RDM, LKAS, ACC with Low-Speed Follow, and CMBS and is designed to detect objects that trigger those systems to operate.[6]

29.   Honda similarly explains that LKAS uses the camera to monitor lane lines and apply steering input to help keep the vehicle between detected lane markings.[7] Honda instructs owners that ACC and CMBS also use the camera and directs owners to the common "Front Sensor Camera" section when describing the operating conditions and limitations of those systems.[8]

30.   Because multiple functions use a common camera, failure of the camera does not merely eliminate one isolated convenience feature. When the Defect manifests, multiple separately advertised safety and driver-assistance functions may simultaneously become unavailable, display warnings, or operate abnormally.

31.   Owners experiencing the Defect commonly receive contemporaneous warnings relating to CMBS, ACC, LKAS, RDM, Forward Collision Warning, Lane Departure Warning, Traffic Sign Recognition where equipped, and other camera-dependent Honda Sensing® functions.

32.   The particular combination and wording of the warnings varies by model, model year, equipment, and instrument-panel configuration. Those variations do not alter the common nature of the Defect because the affected functions depend on information supplied by the same front sensor camera.

33.   In some instances, owners may also receive contemporaneous warnings relating to ABS, VSA, electric power steering, or other electronic

---

[6] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 5, at 394. The manual expressly identifies LKAS, RDM, ACC with Low-Speed Follow, and CMBS as systems using the camera.

[7] *Id.* at 415–20. The manual states that the front camera monitors lane lines and that LKAS applies steering torque to keep the vehicle between detected lines.

[8] *Id.* at 394, 406, 439, 443.

7

CLASS ACTION COMPLAINT

systems. Plaintiff does not allege that the front sensor camera independently performs the base functions of ABS, VSA, the airbags, or those other systems. Instead, additional warnings may arise from the vehicle's interconnected electronic architecture or appear at the same time as the camera-dependent warnings.

34. Honda's manual itself confirms that multiple system indicators may appear together under some electronic conditions. For example, Honda states that VSA, VSA OFF, CMBS, and low-tire-pressure indicators may illuminate together when certain electronic calibration information is lost.[9] The existence of a contemporaneous warning therefore does not establish that every identified system contains an independent mechanical defect.

35. The Defect manifests during ordinary vehicle operation without misuse, abuse, collision damage, neglect, or improper maintenance by owners. The resulting warnings may remain active over repeated ignition cycles and require professional diagnosis rather than disappearing when temporary environmental conditions subside.

36. The Defect is distinct from temporary camera limitations caused by dirt, fog, snow, excessive heat, direct sunlight, obstructed glass, or similar external conditions. Honda's manual instructs owners to address those temporary conditions and directs them to seek dealer inspection when a camera-related message does not disappear after the windshield has been cleaned and the vehicle has been driven.[10]

37. Diagnosing the Defect may require retrieval and analysis of diagnostic trouble codes, inspection of the windshield and camera mounting area, electrical testing, software testing, component testing, road testing, and efforts to

---

[9] *Id.* at 442, 549.

[10] *Id.* at 395.

CLASS ACTION COMPLAINT

distinguish a camera failure from a radar, windshield, wiring, or software condition.

38.    Repairing the Defect may require replacement of the front sensor camera or components necessary for its operation, software programming, aiming, calibration, and related labor.

39.    Replacement or disturbance of the camera is not a plug-and-play procedure. Honda states that proper camera calibration is necessary for the system to operate properly and requires camera recalibration following windshield replacement.[11]

40.    Honda's calibration requirement reflects the precision required by the camera-dependent systems. The camera must accurately determine the location of vehicles, pedestrians, lane markings, and other objects relative to the Class Vehicle before those systems can perform their intended functions.

41.    Diagnosing and repairing the Defect may cost owners hundreds or thousands of dollars. Owners may incur additional costs when an initial diagnosis attributes the warnings to another component but the warnings persist until the front sensor camera is replaced and calibrated.

42.    Even after repair, owners remain subject to diminished value and concern that the Defect may recur because Honda has not disclosed the full nature and scope of the Defect or implemented an effective class-wide remedy.

B. **Honda Marketed the Class Vehicles as Providing Comprehensive Standard Safety Technology**

43.    Honda has invested substantial resources in designing, engineering, and marketing vehicle-safety technologies. Honda promotes those technologies as central to its vehicles' quality, performance, and value.

---

[11] *Id.* at 394. Honda states: "Proper calibration of the camera is necessary for the system to operate properly."

CLASS ACTION COMPLAINT

44.     Honda marketed the Class Vehicles as incorporating a comprehensive package of both active and passive safety features. Honda did not present Honda Sensing® as a trivial or incidental accessory. Instead, Honda promoted the suite as a significant part of the safety functionality incorporated into the Class Vehicles.

45.     Honda describes Honda Sensing® as a safety-driving-assistance system that recognizes conditions surrounding the vehicle and assists the driver with safe driving and collision avoidance.[12] Honda represents that the system uses sensor information to recognize external conditions, predict hazards, and provide driver assistance.[13]

46.     Honda's marketing materials describe Honda Sensing® as an intelligent suite of safety and driver-assistance technologies designed to alert drivers to conditions they might otherwise miss. Honda prominently advertises CMBS, RDM, ACC, LKAS, and Traffic Sign Recognition as important components of that suite.[14]

47.     Honda specifically marketed the 2018 Clarity Plug-In Hybrid as being "loaded with standard safety features," including: the Advanced Compatibility Engineering™ ("ACE™") body structure; Vehicle Stability Assist™ ("VSA®"); seven airbags; and the standard Honda Sensing® suite, which Honda represented provided "exceptional driver awareness and occupant protection."[15]

---

[12] Honda Motor Co., Ltd., *supra* note 4.

[13] *Id.*

[14] American Honda Motor Co., Inc., *Honda Sensing®*, Honda Autos, https://automobiles.honda.com/sensing (last visited July 15, 2026); American Honda Motor Co., Inc., *Honda Safety*, Honda Autos, https://automobiles.honda.com/safety (last visited July 15, 2026).

[15] American Honda Motor Co., Inc., *Feature Highlights: 2018 Clarity Plug-In Hybrid*, Honda Information Center, https://www.hondainfocenter.com/2018/Clarity-Plug-In-Hybrid/Feature-Guide/Feature-Highlights/ (last visited July 15, 2026).

10

CLASS ACTION COMPLAINT

48.    Honda's model-specific materials state that Honda Sensing® was standard on every 2018 Clarity Plug-In Hybrid.[16] The standard suite included CMBS, Forward Collision Warning, Lane Departure Warning, RDM, ACC with Low-Speed Follow, and LKAS.[17]

49.    Honda's 2018 Clarity Owner's Manual similarly identifies RDM, CMBS, ACC with Low-Speed Follow, and LKAS as vehicle functions and provides dedicated controls and operating instructions for those systems.[18]

50.    Honda represented that CMBS could assist when a collision with a vehicle or pedestrian was possible by warning the driver and reducing vehicle speed to help minimize collision severity.[19] Honda further represented that ACC could maintain a following interval, LKAS could provide steering assistance within a detected lane, and RDM could warn and assist the driver when the vehicle was unintentionally crossing lane markings or leaving the roadway.[20]

---

[16] American Honda Motor Co., Inc., *Honda Sensing®: 2018 Honda Clarity Plug-In Hybrid*, Honda Information Center, https://www.hondainfocenter.com/2018/Clarity-Plug-In-Hybrid/Feature-Guide/Safety-Features/Honda-Sensing/ (last visited July 15, 2026).

[17] *Id.*

[18] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 5, at 6–7, 394–446. The manual's visual index identifies RDM, CMBS, LKAS, and ACC controls.

[19] American Honda Motor Co., Inc., *Collision Mitigation Braking System™ (CMBS™): 2018 Honda Clarity Plug-In Hybrid*, Honda Information Center, https://www.hondainfocenter.com/2018/Clarity-Plug-In-Hybrid/Feature-Guide/Safety-Features/Collision-Mitigation-Braking-System/ (last visited July 15, 2026); American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 5, at 439.

[20] American Honda Motor Co., Inc., *Honda Sensing®: 2018 Honda Clarity Plug-In Hybrid*, *supra* note 17.

11

CLASS ACTION COMPLAINT

51.    Honda's contemporaneous sales brochure promoted every 2018 Clarity Plug-In Hybrid as including a full suite of safety and driver-assistance technologies intended to assist the driver and help protect vehicle occupants.[21]

52.    Honda's product materials listed the Honda Sensing® functions alongside the Clarity's other standard safety equipment, including VSA, ABS, Brake Assist, the ACE™ body structure, airbags, and occupant-restraint systems.[22] Honda thereby marketed the active and passive systems as complementary components of the Vehicle's broader safety package.

53.    The Defect does not necessarily disable every standard safety component in the Class Vehicles. A camera malfunction does not negate the structural properties of the ACE™ body structure or independently disable the airbags, seat belts, base ABS functions, or other passive systems.

54.    But the continued availability of those unrelated systems does not restore the camera-dependent Honda Sensing® functions. Airbags and body structures cannot replace technologies intended to identify hazards before a collision, provide lane-position assistance, regulate following distance, or help avoid or mitigate a collision.

55.    When the Defect disables the camera-dependent functions, owners lose a distinct and material category of the overall standard safety functionality Honda represented they were purchasing.

---

[21] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid* 6–7 (2017), https://www.hondainfocenter.com/-/media/Honda-Sales-Tool-Media-Folder/Images/2018-Clarity-PHEV/PDF/MY18-Clarity-Plug-In-Hybrid-Brochure.ashx.

[22] American Honda Motor Co., Inc., *2018 Honda Clarity Plug-In Hybrid Trim Walk* 1, 3 (2017), https://www.hondainfocenter.com/-/media/Honda-Sales-Tool-Media-Folder/Images/2018-Clarity-PHEV/PDF/Honda-MY18_CLARITY_Trimwalk_MECH4.ashx.

CLASS ACTION COMPLAINT

56. Honda's representations were material. Reasonable consumers consider vehicle-safety technologies when deciding which vehicle to purchase or lease and how much to pay.

57. The United States Government Accountability Office recognizes that new vehicles are increasingly equipped with advanced driver-assistance technologies designed to prevent or mitigate crashes and support the driving task. GAO also explains that federal vehicle-safety information is intended to educate consumers and assist vehicle-purchasing decisions.[23]

58. A reasonable consumer would consider it important that a front sensor camera could prematurely malfunction, disable multiple standard driver-assistance functions, and require costly diagnosis, replacement, programming, aiming, and calibration.

**C. Honda's Own Materials Establish the Camera's Central Role**

59. Honda's technical publications establish that the front sensor camera is not an incidental component. In the 2018 Clarity, the camera is mounted behind the rearview mirror and is expressly used by LKAS, RDM, ACC with Low-Speed Follow, and CMBS.[24]

60. Honda explains that the camera is designed to detect objects that trigger those systems to perform their functions.[25]

61. LKAS uses the front sensor camera to monitor lane lines. When operating, LKAS may apply steering torque to help keep the vehicle between

---

[23] U.S. Gov't Accountability Off., GAO-24-106255, *Driver Assistance Technologies: NHTSA Should Take Action to Enhance Consumer Understanding of Capabilities and Limitations* 1, 3–5 (2024), https://www.gao.gov/assets/d24106255.pdf.

[24] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 5, at 394.

[25] *Id.*

CLASS ACTION COMPLAINT

detected lane markings and may provide tactile and visual warnings when the vehicle drifts from the lane.[26]

62.     RDM likewise depends on detection of lane markings and roadway boundaries. Honda directs owners using RDM to the manual's common front-camera handling instructions.[27]

63.     ACC with Low-Speed Follow uses the vehicle's forward sensors to detect traffic ahead and maintain a selected following interval. Honda states that camera-related conditions may automatically shut off ACC or reduce its functionality and directs owners to the front-camera section of the manual.[28]

64.     CMBS uses the forward sensors to detect vehicles and pedestrians in front of the vehicle. Honda's manual states that the camera used by CMBS is designed to detect pedestrians and directs owners to the front-camera section when describing CMBS operation and limitations.[29]

65.     The manual further provides that CMBS may automatically shut off or lose functionality when camera-related conditions exist, including an obstructed windshield, interior windshield fog, excessive camera temperature, reflections, poor lighting, or other conditions impairing visual detection.[30]

66.     Depending on the model and configuration, the front sensor camera also supports Forward Collision Warning, Lane Departure Warning, Traffic Sign

---

[26] *Id.* at 415–20.

[27] *Id.* at 396–99.

[28] *Id.* at 400–09. Honda states that ACC may shut off under camera-related conditions and directs owners to the front-camera section.

[29] *Id.* at 439–46. Honda's manual describes CMBS and states that the CMBS camera is designed to detect pedestrians.

[30] *Id.* at 443–44.

14

CLASS ACTION COMPLAINT

Recognition, Automatic High Beam, Lead Car Departure Notification, and other driver-assistance features.[31]

67.    Although Honda advertises these functions separately, they rely on overlapping information generated by the same camera. A failure of that common sensing component therefore affects multiple functions at the same time.

68.    Honda's handling instructions further demonstrate the importance and sensitivity of the camera. Honda warns that film, objects, windshield damage, and even minor repairs within the camera's field of vision may cause the systems to operate abnormally.[32]

69.    Honda also instructs owners not to place objects on top of the instrument panel because reflections on the windshield may interfere with detection of lane lines.[33]

70.    Honda expressly states that the camera must be recalibrated following windshield replacement and that proper calibration is necessary for the system to operate properly.[34]

71.    Honda's manuals also recognize that camera-related conditions may cause a message stating, "Some Driver Assist Systems Cannot Operate."[35] Depending on the condition, Honda instructs owners to cool the area around the camera, clean the windshield, drive the vehicle, or obtain inspection from an authorized Honda dealer if the message persists.[36]

---

[31] Honda Motor Co., Ltd., *supra* note 4; American Honda Motor Co., Inc., *Honda Sensing®*, *supra* note 15.

[32] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 5, at 394.

[33] *Id.* at 395.

[34] *Id.* at 394.

[35] *Id.* at 395.

[36] *Id.*

15

CLASS ACTION COMPLAINT

72.     These instructions establish that Honda understood that impairment of one front sensor camera could render multiple driver-assistance systems unavailable.

73.     Honda nevertheless failed to disclose that the Class Vehicles contained a latent defect capable of causing the camera itself, or the components necessary for its operation, to prematurely malfunction under ordinary operating conditions.

**D. The Defect Causes Multiple Honda Sensing® Functions to Become Unavailable**

74.     When the Defect manifests, owners receive clusters of warnings indicating that multiple Honda Sensing® functions are unavailable or have experienced a problem.

75.     Those warnings are consistent with Honda's integrated system design. When the camera ceases to provide reliable information, the functions that depend on its input cannot operate as designed.

76.     The loss of those functions deprives owners of features Honda represented would provide collision warnings, emergency braking assistance, lane-position warnings, steering assistance, road-departure assistance, and following-distance control.

77.     Consumers purchased Class Vehicles equipped with functioning standard driver-assistance technologies. They did not bargain for vehicles in which several standard safety functions would prematurely become unavailable because of a latent camera defect.

78.     Persistent failure of the camera is also materially different from an ordinary temporary limitation caused by rain, snow, dirt, heat, glare, or an

16

CLASS ACTION COMPLAINT

obstructed windshield. Honda's manual identifies those temporary conditions and instructs owners how to respond to them.[37]

79.    The Defect instead causes warnings that persist after ordinary external conditions have been addressed and requires dealership diagnosis and repair.

80.    Publicly available owner reports describe substantially similar manifestations in Honda vehicles equipped with materially similar Honda Sensing® architecture, including simultaneous driver-assistance warnings, continuing loss of multiple functions, camera-related diagnosis, and camera replacement or calibration.[38]

81.    Industry repair materials likewise explain that failure of a forward-facing Honda camera may produce a cascade of warnings affecting ACC, LKAS, CMBS, and related functions and that camera replacement requires specialized aiming or calibration.[39]

82.    Those reports are consistent with Honda's own description of the camera as a common sensor used by multiple systems. They also are consistent with Plaintiff's experience.

83.    The owner reports and third-party materials are not the sole basis for Honda's knowledge. Honda possessed substantially more reliable information

---

[37] *Id.* at 394–95, 406, 420, 443–44.

[38] *See, e.g., Honda Sensing Camera Questions*, OdyClub, https://www.odyclub.com/threads/honda-sensing-camera-questions.375884/ (last visited July 15, 2026); Post to *2016–2022 Honda Pilot Owners Group*, Facebook, https://www.facebook.com/groups/2016HondaPilot/posts/2790573361144632/ (last visited July 15, 2026).

[39] *See, e.g.,* Car ADAS Solutions, *Honda Sensing: A Guide to Honda's ADAS System and Safety Features* (Mar. 16, 2023), https://caradas.com/honda-sensing-tutorial/; Go-Parts, *Honda & Acura Camera Problems (2020–2025): Accord, Civic, Pilot & Integra* (updated June 27, 2026), https://www.go-parts.com/garage/video-camera-honda-pilot-acura-integra-honda-accord-2020-2025.

17

CLASS ACTION COMPLAINT

through its engineering, warranty, dealership, diagnostic, parts, customer-service, and field-monitoring systems.

84.    As a direct result of the Defect, owners lose the use of material standard safety functions, incur diagnosis and repair expenses, suffer diminished vehicle value, and receive less safety-related functionality than Honda represented.

### E. **Honda Knew or Should Have Known of the Defect**

85.    Honda knew or should have known of the Defect before Plaintiff and Class Members purchased or leased the Class Vehicles.

86.    Honda designed or approved the Honda Sensing® architecture, selected or approved the camera and related components, established performance requirements, and controlled system testing, validation, manufacturing, technical documentation, warranty administration, and post-sale monitoring.

87.    Before releasing the Class Vehicles, Honda possessed information generated through design verification, durability testing, environmental testing, thermal testing, optical testing, software testing, calibration testing, supplier qualification, quality-control review, and pre-production vehicle evaluation.

88.    Those processes evaluated whether the front sensor camera and associated components could reliably function under foreseeable temperatures, vibration, moisture, glare, lighting, windshield conditions, electrical conditions, and ordinary vehicle use.

89.    Honda's detailed owner instructions demonstrate its knowledge of the camera's operational importance and sensitivity. Honda knew which systems used the camera, where the camera was mounted, which conditions could impair it, which warnings could result, and when recalibration was required.

90.    Honda also knew that the loss of camera input could disable multiple driver-assistance systems at once. Honda expressly identifies LKAS, RDM, ACC,

18

CLASS ACTION COMPLAINT

and CMBS as systems using the front sensor camera.[40]

91.    After the Class Vehicles entered the market, Honda continued receiving information regarding camera failures through warranty claims, authorized-dealer repair orders, diagnostic trouble codes, Technical Assistance requests, customer contacts, replacement-camera orders, warranty parts returns, supplier communications, engineering investigations, software and calibration records, and field-performance monitoring.

92.    Honda's authorized dealership network provided Honda with direct and continuing notice. Owners presenting multiple Honda Sensing® warnings were diagnosed through Honda-approved procedures and equipment, and replacement cameras and related parts were obtained through Honda's parts-distribution system.

93.    Each repair order, warranty claim, technical-assistance request, replacement-camera order, programming event, and calibration procedure supplied Honda with additional information regarding the frequency, manifestations, cost, and consequences of the Defect.

94.    The recurring pattern was identifiable because camera failures produced clusters of Honda Sensing® warnings and repeated camera-related diagnostic and repair activity. Honda could aggregate that information across models, model years, dealerships, part numbers, diagnostic codes, and geographic locations.

95.    Honda's own data systems further gave it access to vehicle warning and diagnostic information. The 2018 Clarity Owner's Manual states that service-related devices record powertrain information to help technicians diagnose problems and that some diagnostic and maintenance information is uploaded to

---

[40] American Honda Motor Co., Inc., *2018 Clarity Plug-In Hybrid Owner's Manual*, *supra* note 5, at 394.

CLASS ACTION COMPLAINT

Honda when the vehicle starts.[41] The manual separately states that the Clarity's monitoring system transmits information including warning indicators and messages to Honda for technical diagnosis, preventive maintenance, research, and vehicle development.[42]

96.     Honda therefore possessed information unavailable to ordinary consumers concerning both individual camera failures and broader patterns across its nationwide vehicle population.

97.     Publicly available consumer complaints provided additional notice and corroborated the internal repair, warranty, and diagnostic information available to Honda.

98.     Despite its superior knowledge, Honda continued to market the Class Vehicles and Honda Sensing® as offering advanced and dependable standard safety functionality.

99.     Honda failed to disclose that the front sensor camera was susceptible to premature malfunction during ordinary operation.

100.    Honda also failed to disclose that failure of the camera could simultaneously disable multiple separately advertised driver-assistance functions and require substantial expenditures for diagnosis, replacement, programming, aiming, and calibration.

101.    Rather than notify owners and provide an effective class-wide remedy, Honda shifted the cost of restoring those standard safety functions to consumers.

---

[41] *Id.* at unnumbered introductory page 2. The manual states that service-related devices record information to assist technicians and that some diagnostic and maintenance information is uploaded to Honda when the vehicle starts.

[42] *Id.* at unnumbered introductory page 4. Honda states that the vehicle transmits warning indicators and messages for technical diagnosis, preventive maintenance, research, and vehicle development.

CLASS ACTION COMPLAINT

102. Honda's omissions were material. A reasonable consumer would consider it important that a latent defect affecting one shared sensing component could disable multiple standard driver-assistance systems and result in hundreds or thousands of dollars in repair costs.

103. Honda had a duty to disclose the Defect because Honda possessed exclusive and superior knowledge of material facts unavailable to consumers and made partial representations concerning the safety, reliability, functionality, and value of Honda Sensing® without disclosing facts necessary to make those representations complete and not misleading.

104. The Defect was not discoverable through ordinary pre-purchase inspection. The camera and associated electronic components are not readily inspectable by consumers, and the Defect ordinarily manifests only after the vehicle has been placed into service.

105. Had Honda disclosed the Defect, Plaintiff and reasonable consumers would not have purchased or leased the Class Vehicles, or would have paid substantially less for them.

## CLASS ACTION ALLEGATIONS

106. Plaintiff brings this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the following proposed Classes:

**Nationwide Class**
All residents of the United States who purchased or leased a Class Vehicle.

**Virginia Subclass**
All residents of the State of Virginia who purchased or leased a Class Vehicle.

107. The "Nationwide Class" and "Virginia Subclass" are collectively referred to as the "Class," except where otherwise indicated.

108. Excluded from the Class are Defendant; Defendant's parents,

21

CLASS ACTION COMPLAINT

subsidiaries, affiliates, successors, assigns, officers, directors, and employees; any entity in which Defendant has a controlling interest; the judicial officers assigned to this action and their immediate family members; and Court personnel.

109.   The members of the Class are so numerous that joinder of all members is impracticable. Honda sold and leased thousands of Class Vehicles throughout the United States. The precise number of Class members is unknown to Plaintiff but is readily ascertainable from Honda's records, dealership records, vehicle registration data, warranty information, and other records maintained by Honda or its agents.

110.   This action presents numerous questions of law and fact common to the Class that are capable of class-wide resolution. Those common questions include, among others:

    a.   whether the Class Vehicles contain the Defect;

    b.   whether the Defect existed at the time the Class Vehicles left Honda's control;

    c.   whether Honda knew or should have known of the Defect before selling the Class Vehicles;

    d.   whether Honda concealed or failed to disclose the Defect;

    e.   whether Honda breached express and implied warranties;

    f.   whether Plaintiff and Class members suffered economic injury;

    g.   the proper measure of damages and restitution; and

    h.   whether injunctive or declaratory relief is appropriate.

111.   Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Vehicle containing the same alleged Defect, was exposed to substantially similar representations and omissions, experienced the same Defect, incurred repair expenses, and suffered the same type of economic injury as other Class members.

CLASS ACTION COMPLAINT

112. Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff has no interests antagonistic to those of absent Class members and has retained counsel experienced in complex consumer, automotive defect, and class action litigation.

113. Common questions of law and fact predominate over any individual issues because Honda's liability arises from standardized conduct applicable to all Class members, including the design of the Class Vehicles, Honda's uniform marketing of Honda Sensing®, its alleged concealment of the Defect, and its uniform warranty and post-sale practices.

114. A class action is superior to individual actions because the damages suffered by many Class members are insufficient to justify separate lawsuits, and class treatment will promote efficiency, avoid inconsistent adjudications, and provide a practical means of resolving the common issues presented by Honda's alleged conduct.

## TOLLING OF STATUTES OF LIMITATIONS

115. *Discovery Rule*. Plaintiff's claims accrued upon discovery that the front sensor camera system that Honda designed, manufactured, and installed in the Class Vehicles suffered from the Defect and that the resulting failures were attributable to that latent condition. Although Honda knew of and omitted the Defect, Plaintiff and Class Members could not and did not discover these facts through reasonably diligent investigation until after they experienced front sensor camera failures and reasonably excluded other potential causes.

116. *Active Concealment Tolling*. Any statutes of limitations are tolled by Honda's knowing and active concealment of the Defect. Honda kept Plaintiff and all Class Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiff. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and the Class

23

CLASS ACTION COMPLAINT

Members. Plaintiff could not reasonably have discovered the front sensor camera defect.

117. *Estoppel*. Honda was and is under a continuous duty to disclose to Plaintiff, as well as Class Members, the true character, quality, and nature of the Class Vehicles' Honda Sensing® system. At all relevant times, and continuing to this day, Honda knowingly, affirmatively, and actively misrepresents and omits the true character, quality, and nature of the Class Vehicles' front sensor camera system. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. Plaintiff and Class Members reasonably relied upon Honda's knowing and/or active omissions. Based on the foregoing, Honda is estopped from relying upon any statutes of limitation in defense of this action.

118. *Equitable Tolling*. Honda took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Class Vehicles with the Defect. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of the Plaintiff and Class Members. When Plaintiff learned about this material information, she exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing her claims. Honda wrongfully omitted its deceitful acts described above. Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## COUNT I

### COMMON LAW FRAUD/FRAUD BY OMISSION
### (On Behalf of Plaintiff and the Nationwide Class)

119. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

CLASS ACTION COMPLAINT

120. Honda concealed and omitted material facts concerning the Defect before and after Plaintiff and Class Members purchased or leased the Vehicles.

121. Honda had exclusive and superior knowledge concerning the Defect that was not reasonably available to Plaintiff or Class Members. Among other things, Honda possessed information obtained through engineering validation, supplier communications, durability testing, warranty claims, dealership repair records, Technical Assistance requests, replacement-part data, Technical Service Bulletins, customer complaints, post-sale field performance monitoring, and other internal sources unavailable to consumers.

122. Honda also possessed exclusive knowledge because it designed the Honda Sensing® system, authored the technical documentation governing operation of the front sensor camera, established the inspection and calibration procedures applicable to that camera, and maintained centralized warranty and repair information concerning recurring failures affecting the Vehicles.

123. The Defect is material because it affects numerous safety-related technologies Honda expressly marketed as significant features of the Vehicles, including CMBS, ACC, LKAS, RDM, Traffic Sign Recognition, and related Honda Sensing® functions. A reasonable consumer would consider it important that malfunction of a single concealed component could simultaneously disable multiple advertised safety systems and require substantial out-of-pocket repair expenses.

124. Honda had a duty to disclose the Defect because, among other reasons:

    a. Honda possessed exclusive knowledge of material facts not known or reasonably available to consumers;

    b. Honda actively concealed the existence and nature of the Defect;

    c. Honda made partial representations concerning the safety, reliability, durability, and functionality of Honda Sensing® while

25

CLASS ACTION COMPLAINT

omitting facts necessary to render those representations complete and not misleading;

d. Honda knew the omitted facts materially affected the safety, value, and utility of the Vehicles; and

e. Honda possessed superior access to information unavailable to Plaintiff and Class Members.

125.    Honda represented that Honda Sensing® would assist drivers in recognizing roadway hazards, avoiding collisions, maintaining lane position, and improving overall driving safety. Honda omitted that the front sensor camera was susceptible to premature internal malfunction and that failure of that component could simultaneously disable multiple integrated driver-assistance systems.

126.    Plaintiff and reasonable consumers could not have discovered the Defect through ordinary diligence before purchasing or leasing the Vehicles because the defect is latent and ordinarily manifests only after the vehicles have been placed into service.

127.    Plaintiff reasonably relied upon Honda's omissions and partial representations when deciding to purchase her vehicle. Had Honda disclosed the Defect before sale, Plaintiff would not have purchased the vehicle or would have paid substantially less for it.

128.    Honda intended that consumers rely upon its omissions and continue purchasing Vehicles without knowledge of the Defect.

129.    As a direct and proximate result of Honda's fraudulent omissions and concealment, Plaintiff and Class Members suffered damages, including overpayment for their vehicles, out-of-pocket repair expenses, diminished vehicle value, loss of the benefit of their bargain, and other damages according to proof.

130.    Honda's conduct was willful, knowing, and carried out with conscious disregard for the rights of Plaintiff and Class Members, thereby entitling Plaintiff

26

CLASS ACTION COMPLAINT

and the proposed Class to all available legal and equitable relief, including punitive damages where permitted by applicable law.

## COUNT II

### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and the Nationwide Class)**

131.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

132.    At all relevant times, Honda was and is a merchant, manufacturer, seller, and warrantor with respect to the Class Vehicles under applicable state law.

133.    Honda issued written express warranties in connection with the sale and lease of the Class Vehicles. Among other things, Honda expressly warranted that the Class Vehicles were free from defects in materials and workmanship for the applicable warranty period and agreed to repair or replace defective components that failed during the warranty period, subject to the terms and conditions of its written warranties.

134.    Honda further represented through its written warranties, owner's manuals, marketing materials, and warranty publications that the Class Vehicles, including the Honda Sensing system and its component parts, were designed and manufactured to perform safely, reliably, and in accordance with Honda's specifications under normal operating conditions.

135.    These affirmations of fact, promises, descriptions, and written warranties became part of the basis of the bargain between Honda and Plaintiff and similarly situated consumers.

136.    The Defect causes the front sensor camera to prematurely malfunction during ordinary operation, preventing Honda Sensing® technologies from functioning as represented.

137.    Plaintiff's vehicle exhibited symptoms of the Defect during ordinary use and without misuse, abuse, neglect, accident, or improper maintenance.

27

CLASS ACTION COMPLAINT

138. Plaintiff presented her vehicle for diagnosis and repair after the Defect manifested. Honda and/or its authorized repair facilities diagnosed and attempted to repair the vehicle, yet Plaintiff nevertheless incurred approximately $2,933.00 in out-of-pocket expenses attributable to the Defect.

139. Honda breached its express warranties by, among other things:

    a. selling Class Vehicles containing the Defect;

    b. failing to repair the Defect in a manner that permanently corrected the condition;

    c. failing to replace defective components without charge when legally obligated to do so;

    d. requiring Plaintiff and Class members to pay for repairs associated with the Defect;

    e. failing to disclose the existence of the Defect before and after sale; and

    f. otherwise failing to provide the quality and performance promised under its written warranties.

140. Upon information and belief, Honda knew that the Defect was not an isolated occurrence but instead affected numerous Honda vehicles equipped with materially similar Honda Sensing architecture. Nevertheless, Honda continued to deny warranty coverage in many instances, refused to reimburse consumers for repairs, and failed to implement an adequate corrective program.

141. To the extent Honda contends that certain repairs occurred after expiration of the written warranty, Plaintiff alleges that Honda is estopped from asserting any warranty-duration defense because Honda knowingly concealed the Defect and prevented consumers from discovering it during the warranty period.

142. Honda likewise cannot rely upon warranty limitations where its own conduct prevented Plaintiff and Class members from discovering the latent defect until after expiration of the written warranty.

28

CLASS ACTION COMPLAINT

143.   As a direct and proximate result of Honda's breach of its express warranties, Plaintiff and Class members have suffered damages.

144.   Plaintiff and Class members are entitled to recover all damages available for Honda's breach of express warranty, together with prejudgment interest, costs, attorneys' fees where authorized by law, equitable relief, and such additional relief as the Court deems just and proper.

## COUNT III

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiff and the Nationwide Class)**

145.   Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

146.   At all relevant times, Honda was a merchant with respect to motor vehicles, including the Class Vehicles, and was engaged in the business of designing, manufacturing, importing, distributing, marketing, selling, leasing, warranting, and servicing Honda automobiles.

147.   By placing the Class Vehicles into the stream of commerce, Honda impliedly warranted that the Class Vehicles were merchantable and fit for the ordinary purposes for which such vehicles are used.

148.   The implied warranty of merchantability required that the Class Vehicles, among other things:

  a.   pass without objection in the trade under the contract description;

  b.   be fit for the ordinary purpose of providing safe, reliable, and dependable transportation;

  c.   be adequately contained, packaged, and labeled;

  d.   conform to the promises and affirmations of fact appearing on their labels, marketing materials, and accompanying documentation; and

29

CLASS ACTION COMPLAINT

e. perform in a manner consistent with the reasonable expectations of consumers purchasing vehicles equipped with advanced driver-assistance technologies.

149. At the time the Class Vehicles left Honda's possession and control, they were not merchantable because they contained the Defect.

150. As alleged herein, the Defect causes the front sensor camera to malfunction during ordinary operation, resulting in the simultaneous loss or degradation of multiple Honda Sensing safety systems, including the Collision Mitigation Braking System, Adaptive Cruise Control, Lane Keeping Assist System, Road Departure Mitigation System, and related driver-assistance technologies.

151. A reasonable consumer purchasing a vehicle equipped with Honda Sensing expects those safety-related technologies to function reliably throughout the ordinary useful life of the vehicle and does not expect that a concealed defect affecting a common sensor will disable numerous integrated safety systems.

152. The Defect existed at the time the Class Vehicles were designed, manufactured, distributed, marketed, sold, and leased by Honda, even though the defect typically manifested only after the vehicles had been placed into ordinary service.

153. Plaintiff's vehicle was used in a normal, foreseeable, and intended manner. Plaintiff properly maintained and operated the vehicle.

154. Because of the Defect, Plaintiff's vehicle was not fit for its ordinary purpose of providing safe, reliable transportation with the Honda Sensing® functionality Honda represented. The vehicle could not reliably provide the level of safety, reliability, and functionality reasonably expected by consumers purchasing vehicles equipped with Honda Sensing®.

CLASS ACTION COMPLAINT

155. Plaintiff presented the vehicle for diagnosis and repair after the Defect manifested and incurred approximately $2,933.00 in repair expenses associated with the Defect.

156. Honda has failed and refused to adequately repair, replace, or otherwise remedy the Defect and has instead shifted the financial burden of diagnosing and repairing the Defect to consumers.

157. As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and Class members have suffered damages, including overpayment for the Class Vehicles, out-of-pocket repair expenses, diminished vehicle value, loss of the benefit of their bargain, and other damages according to proof.

158. Plaintiff and Class members are entitled to recover all damages available for Honda's breach of the implied warranty of merchantability, together with prejudgment interest, costs, attorneys' fees where authorized by law, equitable relief, and such additional relief as the Court deems just and proper.

## COUNT IV
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §§ 17200 *et seq.*
### (On Behalf of Plaintiff and the Nationwide Class)

159. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

160. Plaintiff brings this claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts and practices and misleading advertising.

161. Honda is incorporated and headquartered in California. The challenged design, validation, nationwide marketing, warranty-administration, disclosure, and remedial decisions were directed, approved, and implemented in substantial part from Honda's Torrance, California headquarters.

31

CLASS ACTION COMPLAINT

162. Honda's conduct is "unlawful" because it violates the statutory and common-law duties alleged herein, including duties prohibiting fraudulent concealment and deceptive representations and duties arising under applicable warranty law.

163. Honda's conduct is "fraudulent" because it was likely to deceive reasonable consumers. Honda promoted advanced, reliable Honda Sensing® technologies while omitting that the front sensor camera could prematurely malfunction, disable multiple advertised functions, and require costly repair and calibration.

164. Honda's conduct is "unfair" because it caused substantial consumer injury that was not reasonably avoidable or outweighed by countervailing benefits. Honda shifted the Defect's costs and risks to consumers while retaining the resulting commercial benefits.

165. Honda knew or should have known of the Defect through its design, testing, validation, warranty, dealership, diagnostic, parts, customer service, and field monitoring information, yet continued its challenged marketing and failed to provide an effective remedy.

166. Honda's omissions were material. Had Honda disclosed the Defect, Plaintiff and Class members would not have purchased the Class Vehicles or would have paid substantially less for them.

167. Plaintiff and Class members suffered injury in fact and lost money or property as a result of Honda's unfair competition, including out-of-pocket expenses, overpayment, diminished vehicle value, and loss of the benefit of the bargain.

168. Honda acquired money attributable to the sale of the Class Vehicles and to replacement parts, programming, calibration, and repairs administered through its authorized dealer network. Plaintiff and Class members have an ownership interest in those monies.

CLASS ACTION COMPLAINT

169. Plaintiff and Class members continue to own and operate their Vehicles and face the risk that the Defect will recur, that key safety features will again become unavailable, and that they will incur additional diagnostic and repair expenses.

170. Absent injunctive relief, Plaintiff and Class members cannot determine whether Honda has implemented an effective remedy or safely rely on Honda's continuing representations concerning the Class Vehicles.

171. Damages alone cannot compel disclosure, an effective repair or reimbursement program, corrective representations, or prevention of future injury.

172. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Class seek restitution, injunctive and other equitable relief, prejudgment interest, attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5 and other applicable law, and further appropriate relief.

## COUNT V

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class)

173. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

174. Plaintiff pleads this claim in the alternative to her warranty and contract-based claims.

175. Through the conduct alleged herein, Honda knowingly received and retained benefits to which it was not entitled.

176. Plaintiff and Class members conferred direct and indirect monetary benefits upon Honda by purchasing or leasing the Class Vehicles and by paying for repairs, replacement parts, diagnostic procedures, calibration services, and other expenses associated with the Defect.

33

CLASS ACTION COMPLAINT

177. Honda knowingly accepted and retained these benefits while concealing the existence of the Defect and continuing to market the Class Vehicles as equipped with reliable Honda Sensing technology.

178. Honda has been unjustly enriched by retaining revenues generated through the sale, lease, servicing, and repair of vehicles affected by the Defect.

179. It would be inequitable and unjust for Honda to retain those benefits because they were obtained through the concealment of material facts and the sale of vehicles worth less than represented.

180. As a direct and proximate result of Honda's conduct, Plaintiff and Class members have suffered economic losses, including overpayment for the Class Vehicles, repair expenses, diminished value, and loss of the benefit of their bargain.

181. Equity requires Honda to disgorge all benefits wrongfully obtained and to make restitution to Plaintiff and the proposed Class.

182. Plaintiff and Class members therefore seek restitution, disgorgement, equitable relief, costs, interest, and all other relief available in equity.

## COUNT VI

**VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT,**
**Va. Code Ann. §§ 59.1-196 *et seq.***
**(On Behalf of Plaintiff and the Virginia Subclass)**

183. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

184. Plaintiff brings this claim individually and on behalf of the Virginia Subclass.

185. At all relevant times, Honda was a "supplier" within the meaning of the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-198, because it advertised, marketed, distributed, warranted, leased, sold, and serviced consumer motor vehicles, including the Class Vehicles, in Virginia.

34

CLASS ACTION COMPLAINT

186. Plaintiff is a "person" who purchased a consumer good for personal, family, or household purposes within the meaning of the VCPA.

187. At all relevant times, Honda represented that the Class Vehicles were equipped with a reliable, integrated Honda Sensing system designed to enhance vehicle safety by continuously monitoring roadway conditions and assisting drivers through advanced driver-assistance technologies.

188. As alleged herein, those representations were materially misleading because Honda omitted that the Class Vehicles suffered from the Defect, which causes the front sensor camera and related components to prematurely malfunction, disabling multiple Honda Sensing functions during ordinary vehicle operation and requiring costly diagnosis, replacement, programming, and calibration.

189. Honda knew, or should have known, of the Defect before Plaintiff purchased her Vehicle through its engineering and validation testing, warranty data, dealership repair records, Tech Line communications, returned-parts analyses, technical publications, customer complaints, NHTSA complaints, and post-sale monitoring.

190. Despite possessing materially superior knowledge concerning the Defect, Honda failed to disclose it to Plaintiff or reasonable consumers before or at the time of sale and continued to market the Class Vehicles as equipped with dependable advanced safety technologies.

191. Honda's omissions and representations constituted deceptive acts and practices in connection with a consumer transaction, including misrepresenting the characteristics, uses, benefits, quality, and standard of the Class Vehicles and knowingly concealing material information that reasonable consumers would consider important in deciding whether to purchase or lease the Class Vehicles, in violation of the VCPA, including Va. Code Ann. § 59.1-200(A)(5), (6), and (14).

35

CLASS ACTION COMPLAINT

192. Plaintiff reasonably relied upon Honda's omissions and representations when purchasing her Vehicle. Had Honda disclosed the Defect, Plaintiff would not have purchased the Vehicle or would have paid substantially less for it.

193. As a direct and proximate result of Honda's violations of the VCPA, Plaintiff suffered ascertainable losses, including overpayment for the Vehicle, out-of-pocket repair expenses, diminished value of the Vehicle, loss of the benefit of the bargain, and other economic damages.

194. Pursuant to Va. Code Ann. § 59.1-204, Plaintiff seeks to recover her actual damages, together with any additional relief authorized by the VCPA, including reasonable attorneys' fees, costs, and such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, requests judgment against Defendant and that the Court grant the following:

A. For an order certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g);

B. For an award of actual, compensatory, statutory, restitutionary, and other monetary relief allowed by law in an amount to be determined;

C. For an order awarding declaratory and injunctive relief as permitted by law;

D. For an order requiring Honda to make restitution and disgorge all benefits wrongfully obtained, as permitted by law;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

CLASS ACTION COMPLAINT

F.    For prejudgment and/or post-judgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

DATE: July 16, 2026

*/s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Deborah De Villa (SBN 312564)
*ddevilla@ahdootwolfson.com*
Yufei Wang (SBN 346170)
*ywang@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone:  310.474.9111
Facsimile:   310.474.8585

Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone:  917.336.0171
Facsimile:   917.336.0177

*Attorneys for Plaintiff and the Proposed Class*

37

CLASS ACTION COMPLAINT